**PUBLISHED**

UNITED STATES COURT OF APPEALS
FOR THE FOURTH CIRCUIT

———————

**No. 24-2026**

———————

CRYSTAL RICE, in her individual capacity and as personal representative of the Estate of Cynthia Rice,

　　　　Plaintiff – Appellee,

v.

SCOTT ADAMS, Sheriff; BARRY JANNEY; WILLIAM JOLLY; RICHARD RUNK; TYLER FOX; TIMOTHY DOW; JESSICA REIL; JACOB PLATT; MICHAEL REA; KATHLEEN KISNER; MATTHEW CARR; DARYL OSBORNE,

　　　　Defendants – Appellants,

and

PRIME CARE MEDICAL INC.; M.L. HALLIGAN; JEAN JONES; SAMANTHA CHESTNUT; TAYLOR KENNEDY-LAROSA; MARY ALLEN; NURSE KELLY KIRLIN; NURSE TOBIAS MUTURI; NURSE ERICA JENKINS; BRIANNA CULP; NURSE PATRICIA MEARS; NURSE BENILIZ OHL; DR. CHRISTOPHER KIRCHER; DOE DEFENDANTS 1 - 50,

　　　　Defendants.

———————

Appeal from the United States District Court for the District of Maryland, at Baltimore. Matthew James Maddox, District Judge.  (1:23-cv-02344-MJM)

———————

Argued:  October 21, 2025　　　　　　　　　　Decided:  April 14, 2026

———————

Before NIEMEYER, AGEE, and RICHARDSON, Circuit Judges.

---

Reversed and remanded by published opinion.  Judge Richardson wrote the opinion, in which Judge Niemeyer and Judge Agee joined.

---

**ARGUED:**    John Coleman Karpinski, KARPINSKI, CORNBROOKS & KARP, Baltimore, Maryland, for Appellants.  Randy Evan McDonald, THE LAW OFFICE OF RANDY EVAN MCDONALD, LLC, Washington, D.C., for Appellee.  **ON BRIEF:** Kevin Karpinski, KARPINSKI, CORNBROOKS & KARP, Baltimore, Maryland, for Appellants.

RICHARDSON, Circuit Judge:

Cynthia Rice died in custody after suffering opioid withdrawal. Her estate sued an array of detention officers, alleging they acted with deliberate indifference to her serious medical needs in violation of the Fourteenth Amendment. These officers invoked qualified immunity and moved to dismiss the complaint. The district court denied the motion to dismiss. We reverse. The complaint never connected any named officer to any culpable act or omission. So the district court should have dismissed it.

## I.      BACKGROUND

At this stage, we "recount and accept as true the facts alleged in the complaint." *Langford v. Joyner*, 62 F.4th 122, 123 (4th Cir. 2023).

At 11:09 p.m. on August 28, 2020, Cynthia Rice was booked at the Cecil County Detention Center in Elkton, Maryland. She told unidentified officers that she was a heroin addict suffering from opioid withdrawal. As part of the booking process, medical staff from PrimeCare also learned that Rice was an addict suffering from withdrawal.[1]

PrimeCare's medical staff conducted an intake screening a few hours later, around 2:40 a.m. on August 29. The medical staff noted that she was "overly anxious," "appeared to be under the influence of a drug," and was a heroin addict who "used four bags a day, seven days a week and had not used since the previous day." J.A. 25. The medical staff then scheduled a "high priority" detox check. J.A. 25. They also noted that Rice had high

---

[1] PrimeCare Medical, Inc., a medical services provider, contracts with the Detention Center to provide medical staffing and care. While the complaint includes PrimeCare and individual PrimeCare medical staff as defendants, this qualified-immunity appeal concerns only the defendant officers.

blood pressure and was prescribed blood-pressure medication. Rice then returned to a booking cell.

According to the complaint, the timeline picks up again around 8:59 a.m., when medical staff took Rice's vitals. Less than an hour later, at 9:43 a.m., medical staff ordered an opioid-detox protocol and blood-pressure medication.[2] At 9:52 a.m., Rice reported extreme pain. Medical staff responded and again took her vitals. At unspecified times that same morning, Rice "screamed and writhed in pain." J.A. 26. The "custody staff" told Rice to "shut up" rather than offering aid. J.A. 26. Around 12:30 p.m., an unidentified officer approached Rice's cell and asked if she was okay; she responded that she was not. J.A. 16. When personnel later entered the cell, she was unresponsive. EMS responded and soon pronounced Rice dead.

The complaint never identified what any officer did or knew. Rather, Plaintiff alleged that each Defendant was "made aware of" Rice's condition in three ways: "by observing it themselves, by being informed of her condition by other detainees in the facility, and by being informed by other" staff. J.A. 27. The undifferentiated defendants were thus alleged to have exhibited deliberate indifference to Rice's serious medical need by failing to "diagnose her need for medical care," "provide her medical care," "accurately record the details of her condition," "respond to [Rice's] request for medical attention," and provide "emergency care or transfer [Rice]" to a hospital. *Id.*

---

[2] Plaintiff alleges that Rice never received the prescribed medications, but not that any specific officer knew she had not.

4

The district court agreed that the named officers were deliberately indifferent and concluded both that Plaintiff had adequately stated a § 1983 claim and that the officers were not entitled to qualified immunity at this stage.  The officers appealed.

We have appellate jurisdiction because the denial of qualified immunity is immediately appealable to the extent that it turns on an issue of law.  *Atkinson v. Godfrey*, 100 F.4th 498, 503 (4th Cir. 2024).  Jurisdiction over the qualified-immunity question gives us pendent appellate jurisdiction over overlapping issues, *Rowland v. Perry*, 41 F.3d 167, 175 (4th Cir. 1994), and overlap exists here:  Whether the plaintiff has adequately pleaded a constitutional violation bears on both the complaint's sufficiency and the first prong of qualified immunity.[3]  *See, e.g.*, *Ashcroft v. Iqbal*, 556 U.S. 662, 673 (2009) ("The sufficiency of the pleadings is both inextricably intertwined with and directly implicated by the qualified-immunity defense") (cleaned up); *Mays v. Sprinkle*, 992 F.3d 295, 301 (4th Cir. 2021); *ACLU of Md., Inc. v. Wicomico Cnty., Md.*, 999 F.2d 780, 784 (4th Cir. 1993).  The pleading's sufficiency is a legal question—not a disputed factual question—that we review *de novo*.  *See Tobey v. Jones*, 706 F.3d 379, 385 (4th Cir. 2013).

We reverse because the complaint fails to state a claim.

---

[3] "Qualified immunity shields federal and state officials from money damages unless a plaintiff pleads facts showing (1) that the official violated a statutory or constitutional right, and (2) that the right was 'clearly established' at the time of the challenged conduct." *Ashcroft v. al-Kidd*, 563 U.S. 731, 735 (2011) (quoting *Harlow v. Fitzgerald*, 457 U.S. 800, 818 (1982)).

5

## II.    THE COMPLAINT FAILS TO STATE A CLAIM

Rule 8 of the Federal Rules of Civil Procedure requires that a complaint contain "a short and plain statement of the claim showing that the pleader is entitled to relief." Fed. R. Civ. P. 8(a)(2). To survive a motion to dismiss, the complaint must plead "sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Iqbal*, 556 U.S. at 678 (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). In the § 1983 context, this standard demands that a plaintiff "plead that *each* Government-official defendant, through the official's *own individual actions*, has violated the Constitution." *Id.* at 676 (emphases added); *see also Langford*, 62 F.4th at 125. Of course, we accept the complaint's factual allegations as true and draw all reasonable inferences in Plaintiff's favor. But we do not—and cannot—accept "legal conclusions," "threadbare recitals of the elements of a cause of action," or "conclusory statements." *Iqbal*, 556 U.S. at 678; *Langford*, 62 F.4th at 125.

Plaintiff alleges that Defendants violated Rice's Fourteenth Amendment right to be free from deliberate indifference to her serious medical needs. *See Short v. Hartman*, 87 F.4th 593, 606 (4th Cir. 2023). To state such a claim, the complaint must plausibly allege both a serious medical need and deliberate indifference to it. *Id.* at 611–12. A serious medical need is "one that has been diagnosed by a physician as mandating treatment or one that is so obvious that even a lay person would easily recognize the necessity for a doctor's attention." *Iko v. Shreve*, 535 F.3d 225, 241 (4th Cir. 2008). And an officer is "deliberately indifferent" when he intentionally, knowingly, or recklessly acts or fails to act when he knew or should have known about both the detainee's condition and the unjustifiably high

6

risk of harm resulting from his action or inaction.[4]   *Short*, 87 F.4th at 611–12 (citing *Farmer v. Brennan*, 511 U.S. 825, 836 (1994) and *Kingsley v. Hendrickson*, 576 U.S. 389, 396–97 (2015)).

To allege that an officer acted with deliberate indifference, the complaint must make defendant-specific allegations.  The allegations must be particular enough to allow one to infer what each defendant did and knew.  *Iqbal*, 556 U.S. at 678–79.  Lumping defendants together won't do.   A plaintiff who makes only "collective allegations against all 'Defendants'"—without specifying how each individual defendant interacted with her or bore responsibility for the alleged constitutional deprivation—has not stated a plausible claim against any defendant.  *See Langford*, 62 F.4th at 125–26.  We require instead "specific factual allegations for each defendant," because only such allegations provide "fair notice to *that* defendant of the plaintiff's claim and underlying factual support."  *Id.* at 125.

Plaintiff's complaint did not plausibly allege that any named officer acted with deliberate indifference to Rice's serious medical needs.  It rested instead on collective allegations.  It never identified how—indeed, *whether*—any named officer ever interacted with Rice, or how—indeed, *whether*—any officer should have known about her condition.  *See Langford*, 62 F.4th at 125–26.  Rather, the complaint treated the sixteen deputy sheriffs who were "custody officer[s] at [the Detention Center] during the period of August 28 and

---

[4] Because we resolve this appeal on sufficiency-of-the-complaint grounds, we do not address whether Defendants would be entitled to qualified immunity.

7

29," J.A. 21–24, as an undifferentiated collective.[5]  It purported to attribute knowledge that one officer should have gained, or acts that another officer may have committed, to all. Take just three examples.  First, Rice allegedly told "Sheriff's deputies" that she was suffering from opioid withdrawal.  J.A. 15.  But are those deputies among these Defendants?  And if so, which of the sixteen?  Second, "custody staff" "were made aware" Rice would suffer withdrawal, but the complaint makes no attempt to specify which staff members were so informed.  J.A. 14–15, 26.  Third, we are left guessing whether the person who told Rice to "shut up" was even a named Defendant, let alone which one.  J.A. 26 (alleging that "[t]he custody staff at [Cecil County Detention Center] told her to 'shut up'" after Rice screamed and writhed in pain).  Nor can we reasonably infer that all sixteen deputies were present when Rice was processed, or that they were within earshot when she called out in pain.  Repeated, vague reference to "custody staff" and "Sheriff's deputies" cannot substitute for identifying individual officers.  *Langford*, 62 F.4th at 125–26.  The complaint does not permit us to infer whether or how a particular Defendant should have even *known* about Rice's condition—let alone ignored it.  So Plaintiff has failed to plausibly allege that any Defendant violated Rice's constitutional rights.

What's more, Rice's undifferentiated deliberate-indifference-to-medical-needs allegations are even "less plausible" because the officers were *nonmedical* staff.  *Langford*, 62 F.4th at 126.  Like the nonmedical staff in *Langford*, these officers, absent contrary allegations, would have "had no reason to have known or interacted with [Rice]" about her

---

[5] The complaint names the Sheriff but alleges no personal involvement.

medical condition. *Id.* (internal citation omitted). That medical professionals examined Rice several times—as detailed in the complaint—further undermines any inference that the officers acted with deliberate indifference, *even if* they should have known that she was undergoing withdrawal. For, when a detainee is "under the care of medical experts," detention officers "will generally be justified in believing that the [detainee] is in capable hands." *Iko*, 535 F.3d at 242 (quoting *Spruill v. Gillis*, 372 F.3d 218, 236 (3d Cir. 2004)); *cf. Miltier v. Beorn*, 896 F.2d 848, 854 (4th Cir. 1990) (noting that prison wardens are "entitled to rely upon their health care providers' expertise").

\*      \*      \*

At bottom, the complaint does not allow us to connect any named officer to any act or omission that plausibly amounts to deliberate indifference to Rice's serious medical needs. That flaw is fatal. We reverse the denial of the officers' motion to dismiss and remand for further proceedings.[6]

*REVERSED AND REMANDED*

---

[6] We take no position on whether Plaintiff may amend the complaint on remand. *See* Fed. R. Civ. P. 15.

9